UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GENE ARNOLD,

                    Plaintiff,

       – against –

NORTHLAND GROUP, INC.,

                    Defendant.

**OPINION AND ORDER**

18 Civ. 205 (ER)

Ramos, D.J.:

On January 9, 2018, Gene Arnold, proceeding pro se and *in forma pauperis*, filed the instant suit against Northland Group, Inc.[1] Doc. 2. Arnold contends that Northland violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*, when it obtained his consumer report without a "permissible purpose," as defined in the FCRA.[2] Arnold seeks judgment in the amount of $2,000 for actual or statutory damages, as well as punitive damages, costs, and attorneys' fees.

Before the Court is Northland's motion for summary judgment. Doc. 19. For the reasons stated below, Northland's motion is GRANTED.

---

[1] According to defense counsel, Northland Group, Inc. is now known as Radius Global Solutions, LLC. *See* Doc. 22 at 1 n.1. However, for the purpose of clarity throughout this opinion, the Court will continue to refer to the defendant as "Northland."

[2] This is Arnold's fifth complaint in this district alleging FCRA violations. Four prior actions were voluntarily dismissed: *Arnold v. POM Recoveries, Inc.*, No. 18 Civ. 0186 (AT) (S.D.N.Y. May 14, 2018); *Arnold v. Experian*, No. 16 Civ. 9406 (RJS) (S.D.N.Y. June 9, 2017); *Arnold v. First Nat'l Collection Bureau*, No. 17 Civ. 15 (KPF) (S.D.N.Y. Apr. 5, 2017); and *Arnold v. Major Auto. Chevrolet*, No. 16 Civ. 9407 (CM) (S.D.N.Y. Jan. 11, 2017).

**I.      BACKGROUND**

Northland provides third-party debt collection services to First Premier Bank. Doc. 20-1 ¶ 3. On September 8, 2016, First Premier Bank placed an account in Arnold's name with Northland for collection. Doc. 22 ¶ 1. That same day, Northland pulled Arnold's Experian credit report. *Id.* ¶ 2.

Two days later, on September 10, 2016, Northland allegedly sent Arnold a letter notifying him that his First Premier Bank account was placed with Northland for collection. Doc. 20-1 ¶ 6. The alleged letter also notified Arnold of the account's outstanding balance. *Id.*

One month later, on October 7, 2016, First Premier Bank "recalled" Arnold's account, and Northland, in turn, closed the account on their end. *Id.* ¶ 7; *see also* Doc. 22 ¶ 4. Arnold contends that he never received a letter from Northland and was unaware that First Premier Bank had referred an account in his name to Northland for debt collection. Doc. 24 at 5–6.

Roughly fifteen months later, on January 9, 2018, Arnold filed the instant complaint, in which he contends that Northland willfully and negligently violated the FCRA when it pulled his Experian credit report "without a permissible purpose." Doc. 2. Northland answered Arnold's complaint on February 27, 2018, denying liability. Doc. 10.

On October 24, 2018, Northland sought leave from the Court to move for summary judgment. Doc. 12. The Court held a telephonic pre-motion conference with the parties on November 15, 2018, at which point the Court granted Northland leave to move for summary judgment. The Court also informed Arnold that there was a pro se legal clinic within the courthouse and encouraged him to make use of it.

Northland filed the instant motion on November 21, 2018, with copies served to Arnold via email and U.S. mail. Docs. 19–22. Arnold emailed Northland a timely response in opposition to the motion, but he failed to file a copy of the response with the Court.

On May 28, 2019, Northland forwarded to the Court a copy of Arnold's response in opposition. Doc. 24.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.* "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing, e.g., *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

In deciding a motion for summary judgment, the Court construes the facts in the light most favorable to the nonmovant and resolves all ambiguities and draws all reasonable inferences against the movant. *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011). The nonmovant, however, may not rely on unsupported assertions or conjecture in opposing

summary judgment. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). Rather, the nonmovant "must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 256–57 (1986)). And while pro se plaintiffs in this circuit are entitled to "special latitude" in responding to a motion for summary judgment, *see Montanez v. Lee*, No. 14 Civ. 3205 (NSR), 2019 WL 1409451, at *2 (S.D.N.Y. Mar. 28, 2019) (citation omitted), "this lenient standard 'does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment,'" *id.* (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)).

### III. DISCUSSION

In response to the fact that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers," 15 U.S.C. § 1681(a)(3), Congress enacted the FCRA to ensure that "consumer reporting agencies exercise their responsibilities with fairness, impartiality, and a respect for the consumer's right to confidentiality," *id.* § 1681(a)(4). To that end, section 1681b of the FCRA prescribes the sole circumstances under which a consumer reporting agency may furnish to third parties a "consumer report"—that is, "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living." §§ 1681a–b. Specifically, section 1681b(a) lists the "permissible purposes of consumer reports" and makes clear that consumer reporting agencies may furnish a consumer report only pursuant to such purposes. The FCRA creates a private right of action against consumer reporting agencies for

any negligent or willful violation of the statute. *See Braun v. United Recovery Sys., LP*, 14 F. Supp. 3d 159, 165 (S.D.N.Y. 2014).

"[B]ecause even consumer reporting agencies acting in complete good faith cannot prohibit illicit use of consumer information if users are not bound to obtain consumer reports only for permissible purposes, the FCRA also extends to the conduct of parties who *request* credit information." *Id.* (internal quotation marks omitted). Thus, in reciprocal fashion, section 1681b(f) provides that "a person shall not use or obtain a consumer report for any purpose *unless* . . . the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section." (Emphasis added).

In this case, Arnold's FCRA causes of action against Northland rest entirely upon alleged violations of section 1681b. To state a claim for civil liability based on a violation of section 1681b, Arnold must allege (1) that Northland used or obtained his consumer report for an impermissible purpose, *see Perl v. Am. Express*, Nos. 12 Civ. 4380 & 4796 (ER), 2012 WL 2711270, at *2 (S.D.N.Y. July 9, 2012) (citing § 1681b(f)); and (2) that the violation was willful or negligent, *see Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 473 (2d Cir. 1995) (citing 15 U.S.C. §§ 1681n—o).

Here, it is undisputed that Northland is a "person" who obtained Arnold's "consumer report" from a "consumer reporting agency"—namely, Experian—within the meaning of the FCRA. Thus, the threshold inquiry is whether Northland acted with a permissible purpose when it pulled Arnold's consumer report. If Northland acted with a permissible purpose, then it is not liable for damages under the FCRA. If, however, Northland did *not* act with a permissible purpose, then the Court must consider whether Northland's violation of section 1681b was

willful or negligent. A genuine dispute of material fact concerning either inquiry would preclude summary judgment in favor of Northland.

Northland contends that it acted with a permissible purpose because it pulled Arnold's consumer report while attempting to collect a debt allegedly owed by Arnold. The Court agrees.

Section 1681b provides that "any consumer reporting agency may furnish a consumer report . . . [t]o a person which it has reason to believe . . . intends to use the information in connection with a . . . review or collection of an account of . . . the consumer." *Id.* § 1681b(a)(3)(A). And, as Northland correctly points out, it is well settled in this circuit that a "review or collection of an account" includes a debt collector's attempt to collect a debt. *See* Doc. 20 at 4 (collecting cases); *see also Ritchie v. N. Leasing Sys., Inc.*, No. 12 Civ. 4992 (KBF), 2016 WL 1241531, at *15 (S.D.N.Y. Mar. 28, 2016), *aff'd sub nom. Ritchie v. Taylor*, 701 F. App'x 45 (2d Cir. 2017) ("Plaintiff does not dispute that LFG intended to use plaintiff's credit report to attempt to collect on her account . . . . This is enumerated as a permissible purpose under 15 U.S.C. § 1681b(a)."); *Stonehart v. Rosenthal*, No. 01 Civ. 651 (SAS), 2001 WL 910771, at *4 (S.D.N.Y. Aug. 13, 2001) ("The referral of Stonehart's debt for collection gave Rosenthal a permissible purpose for obtaining her credit report pursuant to section 1681b."); *Edge v. Prof'l Claims Bureau, Inc.*, 64 F. Supp. 2d 115, 118 (E.D.N.Y. 1999), *aff'd*, 234 F.3d 1261 (2d Cir. 2000) ("At the time that Professional had the 'social search' conducted to obtain Plaintiff's address, it had been referred a debt for collection, guaranteed by Plaintiff, from North Shore Hospital. The referral of that debt gave Professional a permissible purpose for obtaining the credit information pursuant to 15 U.S.C. § 1681b. Specifically, Professional sought the information in the collection of a credit transaction involving Plaintiff.").

Here, at the time Northland obtained Arnold's consumer report from Experian, it is undisputed that First Premier Bank referred to Northland a debt, owed by Arnold, for collection. And Northland contends (and Arnold impliedly admits, based on his failure to respond to Northland's motion) that it pulled his consumer report in connection with its debt collection efforts. *See* Doc. 20-1 ¶¶ 4–6. And there is no evidence in the record tending to suggest that Northland obtained Arnold's consumer report for any other reason than to collect on debt owed by Arnold. Therefore, the Court concludes that Northland had a permissible purpose to access Arnold's consumer report. *See Thomas v. RJM Acquisition LLC*, No. 12 Civ. 5294 (JFB), 2014 WL 723676, at *3 (E.D.N.Y. Feb. 24, 2014).

Arnold, for his part, proffers four arguments why summary judgment should not be granted. None is persuasive.

*First*, Arnold argues that he "never had any accounts or business dealings with defendant." Doc. 24 at 1. Even if true, however, this argument is irrelevant. As explained above, section 1681b(a) provides that consumer reporting agencies, like Experian, may furnish a consumer report to persons, like Northland, when it has reason to believe the person intends to use the information in connection with a review or collection of the consumer's account. Likewise, section 1681b(f) allows persons, like Northland, to obtain and use a consumer report in connection with a review or collection of the consumer's account. The plain text of the statute evinces no requirement that the recipient of the consumer report actually *own* the account and the underlying debt to be collected. Nor does the plain text of the statute require the recipient to have engaged in past business transactions with the consumer before obtaining his or her consumer report. And Arnold points to no authorities suggesting otherwise.

*Second*, Arnold argues that the "permissible purposes" listed in section 1681b(a) describe only the purposes for which a *credit reporting agency* may *furnish* a consumer report, and does not list the purposes for which companies, like Northland, may *obtain* such consumer reports. Doc. 24 at 2. However, this argument is squarely foreclosed by the plain text of the FCRA. *See* § 1681b(f)(1) ("A person shall not use or obtain a consumer report for any purpose *unless . . . the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section*" (emphasis added)).

*Third*, Arnold argues that Northland hasn't provided "any proof of claim that [it is] collecting debts for First Premier Bank." Doc. 24 at 1. Arnold is wrong. Northland submitted a sworn affidavit by its chief compliance officer, in which the officer avers that Northland provides third-party debt collection services to First Premier Bank, *see* Doc. 20-1 ¶ 3, and Arnold has pointed to no record evidence raising a genuine dispute concerning whether Northland was, in fact, a third-party debt collector for First Premier Bank. Thus, this argument fails.

*Fourth*, and finally, Arnold appears to argue that there is a genuine dispute of material fact concerning whether Northland complied with section 1681b(f)(2) of the FCRA. *See* Doc. 24 at 2–3. Section 1681b(f) provides that "[a] person shall not use or obtain a consumer report for any purpose unless" two requirements are satisfied: "(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section," and, relevant here, "(2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification." While his brief is unclear, Arnold appears to contend that the record is devoid of evidence establishing that Northland actually certified its purpose in accordance with section 1681e. However, Arnold did not raise this argument in his complaint. Rather, his complaint only accuses Northland of

8

violating § 1681b by willfully and negligently obtaining his records without a permissible purpose. And while the Court remains mindful of its obligation to afford "special solitude" to pro se litigants like Arnold, "it need not address claims raised for the first time in opposition to a motion for summary judgment." *Bellevue v. 1199SEIU Health Care Emps. Pension Fund*, No. 17 Civ. 7430 (KPF), 2019 WL 400638, at *6 n.6 (S.D.N.Y. Jan. 31, 2019) (citations omitted) (collecting cases); *see also Carl v. Griffin*, No. 08 Civ. 4981 (RMB), 2011 WL 723553, at *6 (S.D.N.Y. Mar. 2, 2011) ("Even given the considerable leeway in pleadings afforded *pro se* litigants, Plaintiff here cannot raise a new claim for the first time at summary judgment." (citation and alterations omitted)); W*right v. Jewish Child Care Ass'n of N.Y.*, 68 F. Supp. 3d 520, 529 (S.D.N.Y. 2014) ("It is black letter law that a party may not raise new claims for the first time in opposition to summary judgment. While this tenet is generally applied to parties represented by counsel, . . . even Wright's current status as a *pro se* litigant does not allow her to assert new claims at this late stage." (citations and internal quotation marks omitted)). Accordingly, the Court concludes that Arnold cannot press this argument at this juncture.[3]

\* \* \* \* \*

Because there is no evidence tending to raise a genuine dispute of material fact concerning whether Northland acted with a permissible purpose when it pulled Arnold's consumer report, summary judgment in favor of Northland is warranted.[4]

---

[3] Even if Arnold's claim was timely raised, it is unclear whether subject matter jurisdiction would exist to entertain his claim, given (1) the Court's conclusion that there existed a permissible purpose to pull Arnold's consumer report and (2) the apparent lack of injury-in-fact (and lack of the risk thereof) resulting from Northland's alleged failure to certify its purpose. *See Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016) ("[E]ven where Congress has accorded procedural rights to protect a concrete interest, a plaintiff may fail to demonstrate concrete injury where violation of the procedure at issue presents no material risk of harm to that underlying interest.").

[4] In his complaint, Arnold also contends that Northland is a "furnisher of information within the meaning of the FCRA, 15 U.S.C. § 1681s–2." Doc. 2 ¶¶ 4, 7. The term "furnisher of information" is not defined in the FCRA, but courts in this district have interpreted it to mean "entities that transmit, to credit reporting agencies, information relating to debts owed by consumers." *See, e.g.*, *Perl v. Am. Express*, No. 11 Civ. 6899 (KBF), 2012 WL 178333, at

## IV. CONCLUSION

For the reasons set forth above, Northland's motion for summary judgment is GRANTED. Arnold's complaint is dismissed with prejudice. The Clerk of Court is respectfully directed to terminate the motion, Doc. 19; to close this case; and to mail Arnold a copy of this opinion.

It is SO ORDERED.

Dated: June 10, 2019
New York, New York

Edgardo Ramos, U.S.D.J.

---

*4 (S.D.N.Y. Jan. 19, 2012) (internal quotation marks omitted). The reference to section 1681s–2 in Arnold's complaint is passing, however, and he does not state any separate causes of action under that section. Thus, to the extent that he intended to state such a claim, it is dismissed. *Id.*